1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10  JOINT TRUSTEES OF THE                    CASE NO. C12-1379JLR
    INTERNATIONAL LONGSHORE &
11  WAREHOUSE UNION-PACIFIC              ORDER ON CROSS MOTIONS
    MARITIME ASSOCIATION                 FOR SUMMARY JUDGMENT
12  PENSION PLAN,

13              Plaintiff,

14       v.

15  JEANETTE PRITCHOW, et al.,

16              Defendants.

17       This matter comes before the court on cross-motions for summary judgment

18  brought by two opposing defendants in this interpleader action.  (Pritchow Mot. (Dkt.

19  # 29); Ross Mot. (Dkt. # 33).)  This is a dispute about who is entitled to surviving spouse

20  benefits under a pension plan governed by the Employee Retirement Income Security Act

21  of 1974 ("ERISA").  Both interpleader defendants, Jeanette Pritchow and Kim Ross,

22  were married to deceased longshoreman Joseph Ross at different times and both claim

ORDER- 1

1  they are entitled to a share of his pension benefits.  This case is controlled by a Qualified

2  Domestic Relations Order ("QDRO") executed between Jeanette Pritchow and Joseph

3  Ross upon their divorce.  The court finds that, under the unambiguous terms of the

4  QDRO, Ms. Pritchow is entitled to all of her former husband's pension benefits.  The

5  court GRANTS Ms. Pritchow's motion for summary judgment (Dkt. # 29) but declines to

6  award attorney's fees, and DENIES Kim Ross's cross-motion for summary judgment

7  (Dkt. # 33).[1]

8  ## I.   FACTUAL BACKGROUND

9       The parties do not dispute the basic facts material to resolving this dispute.

10  Jeanette Pritchow was married to Mr. Ross for 25 years from 1969 until 1994, when they

11  divorced.  (Compl. (Dkt. # 1) ¶ 10.)  Kim Ross married Mr. Ross in 2003.  (*Id.* ¶ 13.)  Mr.

12  Ross was a longshoreman until he retired in 2007, and was entitled to pension benefits

13  under the International Longshore Workers Union-Pacific Maritime Associate Pension

14  Plan ("the Plan").  (*Id.* ¶ 10.)  After he retired, Mr. Ross collected pension benefits under

15

16      [1] Ms. Ross requested oral argument on her motion, but not in a manner that conformed to
the court's Local Rules.  Under Local Rule CR 7(b)(4), all motions are to be decided without

17  oral argument unless otherwise ordered, and a party requesting oral argument shall so indicate by
including the words "ORAL ARGUMENT REQUESTED" in the caption of their motion or

18  responsive memorandum. Ms. Ross did not put these words in her caption. Local Rules W.D.
Wash. CR7(b)(4). For this reason, and because the court finds that oral argument would be

19  pointless in this case, the court declines to hear it.  As a general rule, the court may not deny a
request for oral argument made by a party opposing a motion for summary judgment unless the

20  motion is denied. *Dredge Corp. v. Penny*, 338 F.2d 456, 462 (9th Cir. 1964). However, oral
argument is not necessary where the non-moving party suffers no prejudice. *Houston v. Bryan*,

21  725 F.2d 516, 517-18 (9th Cir. 1984). Here, the issues have been thoroughly briefed by the
parties and oral argument would not be of assistance to the court. Accordingly, the court denies

22  Ms. Ross's request for oral argument.

ORDER- 2

1  the Plan until he died in November 2010.  (*Id.* ¶ 15.)  At the time of his death, he was

2  married to Ms. Ross.  (*Id.* ¶ 16.)

3          Following Mr. Ross's death, there commenced a dispute about who was entitled to

4  the ongoing benefits under Mr. Ross's pension plan.  Ms. Pritchow claims she is entitled

5  to 100% of Mr. Ross's remaining pension benefits pursuant to a QDRO the two executed

6  upon divorce.  (*See id.* ¶ 16.)  On the other hand, Ms. Ross claims she is entitled to a

7  portion of the pension benefits even though she admits that Ms. Pritchow is also entitled

8  to a portion in accordance with the terms of the QDRO.  (*See id.* ¶ 17.)

9          Faced with these competing claims, and fearing exposure to litigation, the Plan

10  began this action in interpleader to determine how and to whom it should pay pension

11  benefits.  (*Id.* ¶ 24.)  Both parties moved for summary judgment, largely agreeing on the

12  material facts and simply asking the court to construe the QDRO in their favor.  (*See*

13  Pritchow Mot.; Ross Mot.)

14                              **II.   ANALYSIS**

15  **A.     Summary Judgment Standard**

16          Summary judgment is appropriate if the evidence, when viewed in the light most

17  favorable to the non-moving party, demonstrates "that there is no genuine dispute as to

18  any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ.

19  P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. Cnty. of L.A.*,

20  477 F.3d 652, 658 (9th Cir. 2007).  The moving party bears the initial burden of showing

21  there is no genuine issue of material fact and that he or she is entitled to prevail as a

22  matter of law.  *Celotex*, 477 U.S. at 323.  If the moving party meets his or her burden, the

1  non-moving party "must make a showing sufficient to establish a genuine dispute of

2  material fact regarding the existence of the essential elements of his case that he must

3  prove at trial." *Galen*, 477 F.3d at 658.  The court is "required to view the facts and draw

4  reasonable inferences in the light most favorable to the [non-moving] party." *Scott v.*

5  *Harris*, 550 U.S. 372, 378 (2007).

6  **B.   Entitlement to Pension Benefits**

7       This case is controlled by the terms of the QDRO between Ms. Pritchow and Mr.

8  Ross.  Ms. Pritchow and Mr. Ross entered into the QDRO in King County Superior Court

9  following their 1994 divorce.  (Compl. ¶ 10.)  The purpose of the QDRO was to divide

10 Mr. Ross's pension benefits between the formerly-married couple.  (Decl. of William

11 Olson (Dkt. # 29-3) at 4.)

12      The QDRO spells out how Mr. Ross's pension benefits should be apportioned.

13 First, during Mr. Ross's life, the benefits were to be shared proportionately between Mr.

14 Ross and Ms. Pritchow in accordance with a formula:

15       [Ms. Pritchow] is awarded fifty percent (50%) of the accrued benefit
         multiplied by a fraction, the numerator being 25 years of credited service
16       from the date of marriage to the date of separation, July 16, 1993, and the
         denominator shall be [Mr. Ross's] paid qualifying years of service at time
17       [sic] benefit commences to [Ms. Pritchow].

18       i.e.    50%    X    _____25_____    X    [Mr. Ross's] Monthly Benefit
                             [Mr. Ross's] Paid
19                          Qualifying Years of
                           Service at Benefit
20                          Commencement

21 (*Id.* at 4.)  At Mr. Ross's death, however, the situation was to change.  If Mr. Ross died

22 before reaching retirement age, Ms. Pritchow would be the "joint and surviving spouse"

1   with respect to the Plan and would be entitled to "the entirety" of the "benefits awarded

2   in this order." (*Id.* at 5.)  The qualifying phrase "benefits awarded in this order" would

3   likely have meant that Ms. Ross would be entitled to pension benefits in the same

4   proportion that she received while Mr. Ross was alive, although there is room for debate

5   on this point.

6        On the other hand, there is no room for debate about Ms. Pritchow's benefits in

7   the event that Mr. Ross died after his retirement date, which is what actually happened.

8   In that scenario, the QDRO unequivocally states that Ms. Pritchow is entitled to "the

9   entirety" of the survivor benefits under the Plan:

10       10. Death of Plan Participant: In the event Plan Participant dies after the
         commencement of payment benefits to [Ms. Pritchow], [Ms. Pritchow]
11       shall receive the entirety of the survivor benefit payable pursuant to the
         plan.
12
     (*Id.* at 5.)  In addition, the QDRO states that Ms. Pritchow "shall be designated as [Mr.
13
     Ross's] joint and surviving spouse for benefits awarded under this order." (*Id.* at 4.)
14
         This language could hardly be more clear.  Under it, since Mr. Ross died after he
15
     began receiving retirement benefits, Ms. Pritchow is entitled to "the entirety of the
16
     survivor benefit payable pursuant to the plan." (*Id.* at 5.)  This clause contains no
17
     qualifying language akin to the "benefits awarded in this order" language that appears in
18
     the clause awarding benefits in the event of death prior to retirement accrual. (*See id.*)
19
     Instead, the clause states in the clearest possible terms that Ms. Pritchow is entitled to
20
     everything a surviving spouse would ordinarily be entitled to under the Plan. (*Id.*)
21
     Indeed, the QDRO employs a "belt and suspenders" approach to ensure this result,
22

1    designating Ms. Pritchow the "joint and surviving spouse" for benefits awarded under the

2    order, which in the event of death after benefit accrual includes benefits awarded under

3    paragraph 10, i.e., "the entirety of the survivor benefit payable pursuant to the plan." (*Id.*

4    at 4-5.)

5         There is also no serious dispute that the terms of the QDRO control the outcome

6    of this case.  Under 29 U.S.C. § 1056(d)(3)(A), "[e]ach pension plan shall provide for the

7    payment of benefits in accordance with the applicable requirements of any qualified

8    domestic relations order."  Similarly, the Ninth Circuit has held that "under ERISA, the

9    pension plan must pay the bearer of a DRO if it determines that the order is a proper

10   QDRO, without further inquiry; '[c]ompliance with a QDRO is obligatory.'" *Trs. of*

11   *Dirs. Guild of Am. Producer Pension Benefits Plans v. Tise*, 234 F.3d 415, 424 (9th Cir.

12   2000) (quoting *Blue v. UAL Corp.*, 160 F.3d 383, 385 (7th Cir. 1998)).  The parties agree

13   that the QDRO here is proper; they do not dispute this fact, nor could they given the

14   QDRO's lengthy recitations explaining that the intent of the parties was to create a

15   binding QDRO.  (*See* Olson Decl. at 2-3, 6.)  Thus, the terms of the QDRO are

16   obligatory.  *See Tise*, 234 F.3d at 424.

17        Having concluded also that the terms of the QDRO are unambiguous and that

18   there is no genuine dispute of material fact, the court now holds what the QDRO already

19   says:  that Ms. Pritchow is entitled to the entirety of the survivor benefit payable under

20   the Plan.

21        Ms. Ross's arguments to the contrary are unpersuasive.  Ms. Ross argues that

22   Washington state law controls the outcome of this case, but she is wrong.  (Ross Mot. at

ORDER- 6

6-15.)  Instead, the case is controlled by the language of the QDRO.  The court rejects

Ms. Ross's argument that we should apportion benefits in accordance with state law,

finding instead that the plain language of the agreement should control "without further

inquiry."  *See Tise*, 234 F.3d at 424.  The court also rejects Ms. Ross's argument that the

QDRO is ambiguous and actually supports apportioning the pension benefits after death

despite unequivocal language to the contrary.  A contract term is ambiguous only if it is

susceptible to more than one reasonable interpretation, and the court holds that Ms.

Ross's interpretation is not reasonable because it contradicts the plain terms of the

QDRO.  Accordingly, the court GRANTS Ms. Pritchow's motion for summary judgment

and DENIES Ms. Ross's cross-motion for summary judgment.

## C.    Attorneys' Fees

ERISA allows for attorney's fee awards in the court's discretion:  "In any action

under this subchapter . . . by a participant, beneficiary, or fiduciary, the court in its

discretion may allow a reasonable attorney's fee and costs of action to either party."  29

U.S.C. § 1132(g)(1).  In the Ninth Circuit, a decision whether to award fees in an ERISA

case is based on five factors:

> (1) [T]he degree of the opposing parties' culpability or bad faith; (2) the
> ability of the opposing parties to satisfy an award of fees; (3) whether an
> award of fees against the opposing parties would deter others from acting in
> similar circumstances; (4) whether the parties requesting fees sought to
> benefit all participants and beneficiaries of an ERISA plan or to resolve a
> significant legal question regarding ERISA; and (5) the relative merits of
> the parties' positions.

*Hummel v. S.E. Rykoff & Co.*, 634 F.2d 446, 453 (9th Cir. 1980).

1    Applying these factors, the court declines to award costs or attorney's fees.  The

2  only factor that weighs in favor of imposing fees is (5) the relative merits of the parties'

3  positions.  There was no bad faith—it appears Plaintiff only litigated because they were

4  faced with the threat of legal action from both Ms. Pritchow and Ms. Ross.  There is no

5  ready ability to pay fees—while the Plan could certainly come up with the money for any

6  fees imposed, it could do so only at the expense of its beneficiaries and their benefits.

7  There is no need to deter the Plan's actions, which were reasonable given the threat of

8  litigation from both sides.  Finally, the benefit sought was personal, not beneficial to all

9  plan beneficiaries, and did not seek to resolve any significant ERISA legal questions.

10  The relative merits of the parties' positions favors awarding fees—this is not a close

11  case—and perhaps it would have been better for the Plan to simply award the benefits to

12  Ms. Pritchow under the unambiguous terms of the CDRO.  However, the Plan's decision

13  to bring an interpleader action does not merit an award of fees under the *Hummel* factors.

### III.    CONCLUSION

15    For the foregoing reasons, the court GRANTS Ms. Pritchow's motion for

16  summary judgment (Dkt. # 29) and DENIES Ms. Ross's cross-motion for summary

17  judgment (Dkt. # 33).

18    Dated this 19th day of December, 2012.

JAMES L. ROBART
United States District Judge